D. T. DENNIS, *Appellee*, v. GUY PERKINS et al., *Appellants*.

No. 17,834.

SYLLABUS BY THE COURT.

1. HUSBAND AND WIFE—*Agreement to Separate—Resumption of Marital Relations*. Reconciliation and the resumption of marital relations do not necessarily avoid a separation agreement previously made by the parties, such effect depending on the question whether the provisions of the contract and the conduct and circumstances show an intention to treat the agreement as no longer in force.

2. ——— *Agreement to Separate—Abrogation*. Such reconciliation and resumption do not warrant the court in deeming such contract avoided any further, if at all, than its terms taken in connection with the situation and conduct of the parties indicate their intention to avoid it.

3. ——— *Right of Inheritance*. The right of inheritance in the property of the wife is not to be denied the husband unless such purpose be express or clearly inferable.

4. QUIETING TITLE—*Evidence—Transaction with Deceased*. In a suit by the husband to quiet his title to property of his deceased wife against her children, both parties claiming to inherit from her, he is prohibited by section 320 of the civil code from testifying to transactions and communications had personally with her.

Appeal from Reno district court. Opinion filed January 11, 1913. Reversed.

*Frank L. Martin,* of Hutchinson, for the appellants.

*F. Dumont Smith,* and *A. C. Malloy,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.: March 30, 1901, the plaintiff, D. T. Dennis, married Hattie G. Perkins, a widow who had two sons, the defendants, by a former marriage. Their conduct worried their mother, and she was heard to complain that they would not see her or accept her presents and to say that she did not want any of her property after her death to go to them. The plaintiff had been married before, and the answer alleged that trouble arose by reason of his solicitude for his first wife and her children. Certain it is that he and his second wife failed to live harmoniously, and in August, 1909, they executed a marriage settlement, which was duly acknowledged and recorded. This instrument was in the following terms:

"We, D. T. Dennis and Hattie G. Dennis, husband and wife, of Reno County, Kansas, fully realizing that we are incompatible and cannot live together and have any peace of our minds and that the conditions of our bodies and the state of our health have made it necessary for us to separate, and inasmuch as we have also heretofore agreed upon a separation, we now agree further, and as follows: The title of all the property herein mentioned stands in the name of the husband, D. T. Dennis, and the wife, Hattie G. Dennis, does not own any property in her own separate right, but for the love and affection that he yet has for his wife and for other good and valuable consideration herein mentioned he hereby grants, sells and conveys to Hattie G. Dennis the dwelling house, lot 48 feet wide and 150 feet long, and all the appurtenances thereon, the said property being in the city of Hutchinson, Reno county, Kansas, and known as Number 120 B. West in said city, and he further agrees that he never will at any time claim any further interest in and to said property, nor in any other property that she may hereafter acquire, and he here agrees to abide by any will that she

has or may hereafter make, and that she is hereby released of any claims that he might make to any of her property at any time by reason of being her husband, and she is hereby authorized to dispose of the said property or any other property she may have at any time free from all claims by descent or otherwise upon his part, and that she may do this without consulting him. He further agrees that he will sign any and all conveyances made by her at any time when called upon and do so without remuneration. He further gives to her in consideration of what she does herein $500 in cash, the receipt of which is hereby acknowledged, and all her clothing, jewelry and such other articles as she may choose from the household goods. And Hattie G. Dennis hereby accepts the above property as her equitable and fair division thereof, and releases her husband, D. T. Dennis, from all further obligations towards her support, and in consideration of the above Hattie G. Dennis, the wife of D. T. Dennis, hereby grants, sells and conveys to D. T. Dennis all her right, title and interest in and to Lots One, Two, Three and Four in Block Five in Handy's East Side Addition to the city of Hutchinson in Reno county, Kansas, and all the appurtenances thereto, the said property being known as Numbers 501 and 503 East Sixth street in Hutchinson, Kan. The foregoing described properties being all the real property owned by either party hereto. And in consideration of the relinquishments herein made by D. T. Dennis and the payment of the said $500 in cash, Hattie G. Dennis, hereby agrees that she never will at any time claim any interest in and to any portion of the said property above conveyed and relinquished to D. T. Dennis, nor in or to any other property, real or personal, that he may hereafter acquire and she here agrees to abide by any will that he may hereafter make, and that he is hereby released of any claims that she might make to any of his property at any time by reason of being his wife, and he is hereby authorized to dispose of his property above described, or that he may hereafter acquire, free from all claims by descent or otherwise upon her part, and that he may do this without consulting her. She further agrees that she will sign any and all conveyances for the said property or other property he may acquire at any time when called upon by him, and that she will sign and acknowl-

edge the same without remuneration. This is intended as a fair, full and complete settlement of all the property now owned by us or either of us, it being understood that the personal property which consists mostly of household goods and not taken by Hattie G. Dennis is to remain the separate property of D. T. Dennis, and that neither party shall ever make any further claim of any kind on each other after this is signed and acknowledged, and this is done also to avoid the expense of litigation. Given under our name this the 2d day of August, 1909.        D. T. DENNIS,
                                 HATTIE G. DENNIS."

On the same date a deed was executed conveying to Hattie G. Dennis the land set apart to her in the settlement, reciting $500 and "other considerations mentioned in a certain post nuptial contract of even date herewith."

Mrs. Dennis had suffered from ill health before the separation, and thereafter she went to her sister's in Indiana. Her health continued bad and she suffered both physically and mentally, and grew worse until in January when her condition became such as to require her removal to a hospital, where she passed away February 1. November 28 she wrote Mr. Dennis, apparently in answer to a letter received from him, expressing sorrow for what she had done, declaring her love for him and insisting that he let her come back to him or she would lose her mind. December 19 another letter still more affectionate and intense was written by her, and this was followed by one on the 26th evincing great concern for him and expressing the wish that they were living together, and another on the 29th of similar import. On January 1 Mr. Dennis wrote to a relative of his wife, recounting some of the troubles of the former relation and stating that he thought it better for his wife to remain where she was as he could not live there and could not bring her to Hutchinson; that he was planning to leave the state, and that if he should ever live with her again it would not be in Kan-

sas or Indiana, but when he should find a new place, if she still desired to live with him the matter could be considered. He asked for definite information as to her health and condition. January 14, in response to a telegram from this relative, having refused to come as suggested by letter, he went to Indiana and joined his wife. They stayed together one night at her sister's, and the next day, Saturday, went to a house which she had rented and remained there until a week from the following Sunday, when she was taken to the hospital. They occupied the same room and bed and he cared for her, she being unable to dress herself or to prepare food. During the first Sunday evening she said to him: "You have always been good to me and treated me nice, and I want you to live with me and be man and wife." One witness testified that when he came he said he was going to take care of his wife, and if she got well they were going back to their home in Kansas; that she said, "the property that they had, they had bought it and worked for it, and when she was done with it, it should go back to him." When she was taken to the hospital he went to visit his sister, being gone about forty-eight hours, and then returned and was with her while she lived. He attended the funeral and made all the arrangements and paid all expenses, using money which she had on deposit, and a small balance remaining after the expenses were paid he retained. This action was brought by Mr. Dennis to quiet his title in the land deeded to his wife against her children, the defendants. It was alleged that the marriage settlement became void upon the resumption of marital relations which he alleged took place in Indiana and continued during the remaining days of her life, that thereupon the consideration for the contract failed and it should be set aside. The answer averred that when the plaintiff reached Indiana his wife was in a state of semi-unconsciousness and mental collapse, totally unable to care for herself, and that immediately

upon his arrival she became uncontrollable; that the property descended to the defendants, and prayed that their title be quieted. The jury returned a verdict in favor of the plaintiff, and in answer to special questions found that Mrs. Dennis had sufficient mental capacity to understand the contract when made and to resume her marital relations with the plaintiff. Judgment was returned accordingly and the defendants appeal.

It is frequently said that reconciliation and resumption of the marital relation will render a contract void. This is a loose and inaccurate statement of a supposed rule. Courts can not make or unmake contracts, but can only determine the effect of express or implied agreements made by those competent to act for themselves. Rescission or abrogation is as volitional as the act of contracting. And as the words used may be judicially construed to constitute a contract, so conduct may be so significant and conclusive as to justify conviction and determination that rescission was actually intended. When husband and wife united for life find it in their hearts to agree to a separation and arrange their property matters accordingly, and after having experimented for a time with the conditions so brought about are found living together to all intents and purposes as if no trouble had arisen, the courts endeavor to ascertain how the parties themselves regard the agreement formerly made and apparently set aside, and as the conduct indicated naturally signifies an intent to deem the separation agreement ended and the courts have so many times taken this view it has become usual to say in effect that the law makes a perfect equation between resumption and abrogation. The truth is, and the law is, that having entered into a valid separation agreement the courts can not and will not deem such contract avoided unless the conduct of the parties impels to the conclusion that they themselves so regarded it. (*O'Malley v. Blease*, 20 L. T. Rep. 899;

28—88 KAN.

*Rowell v. Rowell,* 81 L. T. Rep. 429; *Nicol v. Nicol,* 31 Ch. Div. 524; *Carson v. Murray,* 3 Paige's, Ch. 483; *Heyer v. Burger et al.,* 1 Hoff. Ch. 1; *Hughes v. Cuming,* 36 N. Y. Supr. Ct., App Div., 302; *Hitner's Appeal,* 54 Pa. St. 110; *Zimmer v. Settle et al.,* 124 N. Y. 37, 26 N. E. 341; *Roberts v. Hardy,* 89 Mo. App. 86; *Kefauver v. Kefauver,* 22 Ky. Law, 386, 57 S. W. 467; *Sackman v. Sackman,* 143 Mo. 576, 45 S. W. 264; *Smith v. King,* 107 N. C. 273, 12 S. E. 57; *James v. James,* 81 Tex. 373, 16 S. W. 1087; *Luttrel v. Boggs,* 168 Ill. 361, 48 N. E. 171; *Knapp v. Knapp,* 95 Mich. 474, 55 N. W. 353; *Bülke v. Bülke,* [Ala. 1911] 55 South. 490; *Walker v. Walker,* 76 U. S. 743; *Kehr v. Smith,* 87 U. S. 31; *Daniels v. Benedict,* 97 Fed. 367; *Wells v. Stout,* 9 Cal. 479.

A necessary corollary to this principle is that when the contract contains provisions for the wife which might with equal propriety have been made had no separation been contemplated, and others which would have otherwise been idle, the coming together again of the parties and their conduct may be such as to show an intention to avoid the latter and not the former. This principle is illustrated by such cases as *O'Malley v. Blease, Sackman v. Sackman, Luttrel v. Boggs, Bülke v. Bülke,* and *Walker v. Walker.* In the Nicol case it was said by Bowen, L. J.:

"I think that the true principle is that a renewal of cohabitation would put an end to all or any of the provisions of a separation deed, so far as the language of the deed, properly construed by the light of surrounding circumstances, shews that its provisions were only intended to take effect whilst the separation lasted. . . . Separation deeds are often very complicated, and some provisions may be intended to apply even in the case of a reconciliation, while others may be quite inapplicable to such a state of things, and I should prefer to construe each deed by the light of its surrounding facts rather than to lay down a crystallized rule." (31 Ch. Div. 529.)

In the Walker case, in holding that a trust remained regardless of the reconciliation the court said:

"There is no good reason why effect should not be given to the intention of the parties on the subject. . . . It is clear, then, that this trust was operative during the life of the wife, and that a court of equity will enforce it." (76 U. S. 752, 753.)

If the contract and circumstances be such that the permanent resumption of the relation of husband and wife would naturally and presumptively imply the abrogation of certain of its terms only, there is no reason why such effect should not be given.

The court instructed the jury in substance that they should find for the plaintiff if the parties became reconciled and resumed their marriage relations and duties toward each other and continued to live together as husband and wife for a time prior to the death of the wife. That this was the theory on which the trial court acted appears more plainly from instruction No. 7, which was to the effect that if the wife was mentally competent to execute the contract and receive the deed "then your verdict should be for the defendants, unless you further find that said contract was subsequently revoked and annulled either by the agreement of the parties or their reconciliation to each other and the resumption of their marital duties and relations as husband and wife."

In their brief plaintiff's counsel say:

"There remains but one question in the case—that is a question of law—whether the resumption of the marital relations . . . avoids the written contract."

When this relation was resumed—if it was—she was the owner of the property in question, not only by contract but by deed which with perfect propriety might have been made had no separation been had or contemplated, and we think it clear, upon principle and upon authority, that the effect of the relations and conduct of the parties depended upon their intention,

which intention is to be ascertained from the conduct and circumstances as a question of fact, and that mere reconciliation and resumption do not as a matter of law avoid such contract. The common-law doctrine of coverture with all its incidents has been relegated to the past by modern legislation and decisions and no longer stands in the way of permitting husband and wife to deal with each other as they see fit regarding their real or personal poperty. (*Butler v. Butler and Austin*, 21 Kan. 525; *King v. Mollohan*, 61 Kan. 683, 693, 60 Pac. 731; *Harrington v. Lowe*, 73 Kan. 1, 84 Pac. 570.)   It is suggested by counsel for the defendants that at most the plaintiff could claim a right to inherit.   If it should be determined that the contract was not avoided this right would depend upon its provisions, and under the rule deduced from former decisions in order to preclude such right an intention so to do should be expressed or clearly inferable from the terms of the instrument. (*Kistler v. Ernst*, 60 Kan. 243, 56 Pac. 18; *King v. Mollohan*, 61 Kan. 683, 692, 60 Pac. 731; *Rouse v. Rouse*, 76 Kan. 311, 91 Pac. 45; *Casey v. Casey*, 84 Kan. 380, 113 Pac. 1047.)

Complaint is made that the husband was permitted to testify concerning transactions had personally with the wife in violation of section 320 of the code.   The abstract shows that he testified as to the fact of occupying the same room and bed, and it is stated in the brief without contradiction that he was permitted to state that he cared for her as a husband, and that the subject was gone into in detail concerning the days during which they were together.   The tendency of this and other courts is to carry the terms of the statute no further than their necessary meaning.   It can hardly be said that under the circumstances shown the mere fact that the husband occupied the same room and bed with his invalid wife amounts to a transaction; it might more properly be said to be one item in

a course of conduct possibly amounting to the general transaction of resuming the marital relation. But certainly to go to the extent stated in the brief of testifying in detail as to caring personally for the wife is beyond the letter and spirit of the statute, the philosophy of which is that generally one in this sort of case can not be heard to give his version of a transaction or communication when the lips of the other party thereto are closed by death.

The judgment is reversed and the cause remanded with instructions to grant a new trial.