Eberhart v. Rath.

JOHN EBERHART et al., *Appellees*, v. JOHN RATH, *Appellant*, and HENRY RATH, *Appellee*.

No. 18,063.

SYLLABUS BY THE COURT.

1. ANTENUPTIAL ORAL CONTRACT—*Reduced to Writing after Marriage—Valid.*   A widow residing and owning lands in this state married a man residing and owning property in Nebraska.   As part of the marriage contract it was orally agreed that he should receive nothing of her estate in case she died first, and that she should receive the sum of $1000 only of his estate in case he died first.   After the marriage in Kansas the parties established their home in Nebraska where they resided for seventeen years, when she died, leaving children by a former marriage and a son by her last marriage. Soon after the marriage the husband and wife entered into a written contract, in view of the oral agreement, and of the same purport.   In this action for partition brought by the children of the former marriage the surviving husband claims one-half of the land in this state owned by his wife at the time of the marriage and at her death.   It is held that the written contract is valid and effectual although it does not recite or refer to the previous oral agreement.

2. ———— *Contract—Made in Nebraska—Construed under Laws of Kansas.* The validity of the relinquishment by the husband of his rights in the wife's land in this state under the contract above referred to must be determined by the laws of Kansas although the instrument was made in Nebraska.

3. ANTENUPTIAL CONTRACT—*Validity — Opinions of Lawyers— Not Conclusive.* The opinions of witnesses, practicing lawyers of Nebraska, that the agreement and contract referred to in the first above paragraph are invalid, are not conclusive in the absence of a controlling decision in that state. Upon an examination of statutes in evidence, and decisions of the supreme court of Nebraska, it is concluded that such contracts are regarded in that state in the same light as they are viewed here.

4. EVIDENCE—*Conversation with Deceased Wife — Incompetent.* The surviving husband was incompetent to testify to a conversation with his wife, since deceased, by which he claimed that the postnuptial contract between them had been abrogated.

Appeal from Cheyenne district court. Opinion filed April 12, 1913. Affirmed.

*Ambrose C. Epperson,* of Clay Center, Neb., for the appellant.

*E. E. Kite,* of St. Francis, and *Fred Robertson,* of Atwood, for the appellees.

The opinion of the court was delivered by

BENSON, J.: Defendant John Rath appeals from a judgment excluding him from any interest in land owned by his wife at the time of her death.

John Rath, a resident of Nebraska, and Katherine Eberhart, a resident of Kansas, entered into an oral agreement in this state in contemplation of marriage that he, in case she died first, should take nothing of her estate; and that she, in case he died first, should receive $1000 only of his estate. They were married in Kansas and made their home in Nebraska soon afterwards, where they resided for seventeen years, when Mrs. Rath died. Shortly after establishing their home

in Nebraska they entered into a written contract which
provided, as stated in the findings:

. "That in the event he should survive her that he
should not receive any of her property, by reason of
marital relations, but that if she survived him she
should receive $1,000.00 in lieu of all her rights and
interests, given her by law and reason of marital re-
lations. Said instrument was written up with the un-
derstanding that it was part of the original antenuptial
agreement and in view of that agreement a part of the
marriage contract."

The plaintiffs are children of the deceased, Mrs.
Rath, by a former marriage. In this action for parti-
tion they allege that they and defendant Henry Rath,
who was born of her last marriage, are the owners
of the land, as the sole heirs of their mother whose
surviving husband is barred by the agreements re-
ferred to. Defendant John Rath denied the validity
of the oral agreement, alleged that a written agree-
ment was made in Nebraska after the marriage, sub-
stantially as stated in the petition, but that it was with-
out consideration and void, and that it had been re-
nounced and destroyed by his wife with his consent.
The answer also set out several sections of the Ne-
braska statutes relating to wills, dower and jointure.

An examination of the pleadings shows that there is
no dispute concerning the oral agreement before mar-
riage nor the execution of the written instrument after-
wards, but their validity is challenged.

The plaintiffs contend that the oral agreement has
been fully executed and should be enforced notwith-
standing the statute which provides that no action shall
be brought "to charge any person upon any agreement
made upon consideration of marriage." (Gen. Stat.
1909, § 3838.)  *Weld v. Weld,* 71 Kan. 622, 81 Pac. 183,
and *Knights of Pythias v. Ferrell,* 83 Kan. 491, 112
Pac. 155, are cited in support of this claim. They also
rely upon the written instrument executed afterwards
confirming the verbal agreement. The exact terms of the

instrument are not contained in the abstract. The court found that it was made with the understanding that it was a part of the marriage contract, but it does not affirmatively appear that it contained any recital of or reference to the oral agreement. In such a situation it has been said that the authorities are in hopeless conflict. (*Frazer v. Andrews,* 134 Iowa, 621, 112 N. W. 92, 13 A. & E. Ann. Cas. 556.) In that case it was held that an oral antenuptial agreement by which each party relinquishes rights of property to the other may be given effect by a written postnuptial contract if the written instrument contains a recital that it is made in consideration or as evidence of the previous agreement. The opinion cites *Moore, Adm., v. Harrison, Adm.,* 26 Ind. App. 408, 59 N. E. 1077; *Buffington v. Buffington, Executor,* 151 Ind. 200, 51 N. E. 328, and other cases holding that the postnuptial contract may be enforced although it does not refer to the previous agreement, and *McAnnulty v. McAnnulty,* 120 Ill. 26, 11 N. E. 397, 60 Am. Rep. 552; *Powell's Adm'r v. Myers,* 23 Ky. Law, 795, 64 S. W. 429, and other cases holding that without such reference it is invalid. Other cases discussing this question will be found in a note in 13 A. & E. Ann. Cas. 559. (See, also, Browne on the Statute of Frauds, 5th ed., § 224 and notes.) In the Frazer case it was said that a statute of Iowa forbade a contract of this nature between the parties after marriage, and therefore a postnuptial contract could be made available only as a ratification of the former oral agreement. As the instrument in that case contained no reference to any former agreement it was held that it was invalid. Referring to Indiana cases holding to the contrary, the court observed:

"In passing, it may be remarked as worthy of consideration that in Indiana they have no statute similar to our section 3154, which may perhaps account for the rule in that state." (134 Iowa, 628.)

There is no statute in this state that makes a post-nuptial contract of this nature void. Apart from the previous agreement it is true that the written instrument was not made upon consideration of marriage, for that had already occurred, but a reciprocal relinquishment by each in the property of the other is sufficient. Reciprocal agreements varying marital property rights are referred to as among the considerations for antenuptial agreements in *Hafer v. Hafer*, 33 Kan. 449, 460, 6 Pac. 537. Mr. Bishop says:

"For the principle is well settled, that, though parties marrying must take the *status* of marriage as the law has established it, and can not vary it by ante-nuptial contract, yet, within certain legal limits, and proceeding by legal rule, they may by such contract vary any or all of those property-rights which the status superinduces." (1 Bishop on the Law of Married Women, § 427.)

While these citations refer to antenuptial agreements the principle applies to those made after marriage unless the marriage disqualifies the parties from contracting with each other. Under the statute relating to married women the property of a woman at the time of her marriage remains her own, and she may after marriage sell and convey it in the same manner and with like effect as a married man. (Gen. Stat. 1909, §§ 4872-4877.) A wife may purchase property from her husband. (*Going v. Orns*, 8 Kan. 85; *Dickson v. Randal*, 19 Kan. 212.) A conveyance by husband to wife and contracts between them will be upheld as valid so far as they are just and equitable. (*Sproul v. Atchison National Bank*, 22 Kan. 336; *Horder v. Horder*, 23 Kan. 391; *Miller v. Krueger*, 36 Kan. 344, 13 Pac. 641; *Munger v. Baldridge*, 41 Kan. 236, 21 Pac. 159.) The fiction of the unity of husband and wife which under the common law made contracts between them impossible is no longer a ground of disability, and venerable rules and precedents based upon that fiction must yield to modern legislation liberally interpreted in the light

of present conditions. (*Harrington v. Lowe,* 73 Kan. 1, 18, 84 Pac. 570; *Nagle v. Tieperman,* 74 Kan. 32, 85 Pac. 944.) The legal identity of the wife with respect to her separate property is as complete as that of the husband. It is not necessary, however, to resort to our statutes to uphold the conveyance of property by one spouse directly to the other. While void at the common law they have long been upheld in equity when just, fair and reasonable. (2 Kent's Commentaries, 10th ed., pp. 161, 178; 2 Story's Equity Jurisprudence, 13th ed., § 1395.) The author last named at the section cited says:

"The doctrine is now firmly established in equity, that she [a wife] may bestow her separate property, by appointment or otherwise, upon her husband as well as upon a stranger."

Direct conveyances between husband and wife, when not prejudicial to creditors, have been upheld in many jurisdictions. (*Jones v. Clifton,* 101 U. S. 225; *Shepard v. Shepard,* 7 N. Y. Ch. 56; *Hunt v. Johnson,* 44 N. Y. 27; *Sims and Others v. Rickets,* 35 Ind. 181, 9 Am. Rep. 679; *Wilder et al. v. Brooks et al.,* 10 Minn. 50, 88 Am. Dec. 49 and note; *Carrier v. Teske,* 84 Neb. 60, 120 N. W. 1015.) The intervention of a trustee, although once common, is not now essential. (2 Story's Equity Jurisprudence, 13th ed., § 1380.)

Postnuptial as well as antenuptial agreements are upheld when consistent with the principles of equity. In *King v. Mollohan,* 61 Kan. 683, 60 Pac. 731, it was held that postnuptial settlements controlling the division and affecting the descent of property, freely and intelligently made, and which are just and equitable in their provisions, are not invalid. The court, applying the principles governing antenuptial agreements, held:

"Marriage settlements controlling the division and affecting the descent of property, freely and intelligently made, and which are just and equitable in their provisions, are not invalid." (Syl. ¶ 1.)

In that case the contract had been made in view of a separation, but that fact only afforded a reason for making the contract. Mutual relinquishments of property rights and the payment of money in addition by one to the other afforded sufficient consideration. In *Dennis v. Perkins,* 88 Kan. 428, 129 Pac. 165, a postnuptial contract embracing a conveyance of land by the husband to the wife was upheld, and although the settlement had been made in contemplation of separation it was held that the resumption of marital relations did not rescind the agreement, which it was said will remain in force unless the parties intend that it shall be abrogated. The validity of such agreements depends upon the equities arising out of the circumstances, which may be just as strong when the parties are living happily together as exist after domestic tranquillity has been destroyed.

Recognizing the equality of men and women in respect to their property and contractual rights, emphasized in Kansas and other states by the privilege of the ballot and their participation in government as well as in business, no good reason is perceived for any practical distinction between antenuptial and postnuptial agreements with respect to their validity. The marriage ceremony and living together work no magical change in the understanding or capacity of either to make contracts. The equitable principles upon which one class of agreements is upheld apply with equal force to the other. They both tend to settle questions of property succession and promote peace and good will, especially where there are, as in this case, children by a former marriage.

We are constrained to hold that the written contract in this case, although it did not refer to the prior agreement, is valid and effectual. The instrument would also have been valid had no prior agreement been made.

It is contended by the appellant that as the written instrument was made at the matrimonial domicile in

Nebraska the law of that state governs, and that by that law the agreement is void. In considering this contention it is not deemed necessary to discuss the subject of the law of place generally. Only a few general principles need be stated. The transmission of title to real estate is governed by the laws of the state where it is situated. In the absence of an express contract, the effect of marriage upon real property is determined by the law of the place where the property is situated. This rule is stated as a summary from authorities reviewed in 57 L. R. A. 353, 373. The controversy here is over land in this state. The agreement provides for a relinquishment of the prospective rights of inheritance of the husband in that land. The effect of the instrument purporting to relinquish such rights, as well as the nature of the rights relinquished, must be determined by the laws of this state. (*Watson v. Holden,* 58 Kan. 657, 50 Pac. 883; *Richardson v. De Giverville,* 107 Mo. 422, 17 S. W. 974, 28 Am. St. Rep. 426; *Estate of J. B. Baubichon,* 49 Cal. 18.)

The opinions of witnesses, lawyers practicing in Nebraska, that the agreement is void by the laws of that state, read in evidence, while entitled to proper respect, do not convince this court that such is the fact in the absence of any controlling decision of the supreme court of that state. (*Hutchings v. Railway Co.,* 84 Kan. 479. 114 Pac. 1079; *Eastern Building &c. Assn. v. Williamson,* 189 U. S. 122.) Neither do the statutes pleaded and read in evidence prove that fact. In many other states there are statutes concerning jointure and prescribing the method by which dower may be barred, but they are not generally held to prevent the bar in equity by agreement. (*Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537; 1 Bishop on the Law of Married Women, §§ 363, 418-425.)

The judicial rule in Nebraska appears to be the same. Thus it was held, in *Rieger v. Schaible,* 81 Neb. 33, 115 N. W. 560, that the provisions of the statutes of that

Eberhart v. Rath.

state that a jointure is a bar to dower do not ordinarily prevent an equitable bar, and further, that:

"The provisions of the statute that a jointure is a bar of dower do not ordinarily deprive the intended wife of the power to bar her dower by any other form of antenuptial contract." (Syl. ¶ 3.)

Another decision in that state, upon facts quite similar to the facts of this case, should be referred to. An oral antenuptial contract was entered into between parties intending to marry. After the marriage the agreement was reduced to writing and signed. By the agreement the husband was to have $1000 from the wife's estate upon her death, and he was to release all further claims. He received part of the money before she died, and she made a will by which he was to have the remainder. The surviving husband contended that the agreement was invalid and claimed an interest in her real estate. The court said.

"Even if the contract were wholly invalid, which we do not decide, under these circumstances the plaintiff is estopped to allege its invalidity." (*Erb v. McMaster*, 88 Neb. 817, 820, 130 N. W. 576.)

The same principle of estoppel was also applied by this court in the King case on rehearing (61 Kan. 692), although the grounds stated in the opinion were adhered to. From these decisions it is concluded that nuptial contracts are regarded in Nebraska in about the same favorable light in which they are viewed here. Even if it should be held that the law of that state governs this controversy, the result would be the same.

The surviving husband was incompetent to testify to a conversation with his wife, since deceased, by which he claimed that the postnuptial contract between them had been abrogated. His offer to give such testimony was properly excluded. (Civ. Code, § 320; *Dennis v. Perkins*, 88 Kan. 428, 437, 129 Pac. 165.)

The finding and conclusion of the district court are approved and the judgment is affirmed.