No. 30,061.

MINNIE L. HULLET, *Appellee,* v. LESTER HULLET et al., *Appellants.*

(3 P. 2d 470.)

Opinion filed October 10, 1931.

*Jay T. Botts, of* Coldwater, for the appellants.

*F. C. Price, F. N. Cossman,* both of Ashland, *Dick H. Rich* and *Horace H. Rich,* both of Coldwater, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to partition land. The land had belonged to John Hullet, who died on May 9, 1929. Plaintiff was his widow, and as such claimed half the land. The principal defendants were children of the decedent by a former wife. They claimed all the land under their father's will. The widow prevailed, and the devisees appeal.

The story is told by the findings of fact made by the district court. The findings follow:

"1. Plaintiff, Minnie L. Hullet, is the widow of John Hullet, deceased.

"2. John Hullet died, testate, at Protection, Kan., on the 18th day of May, 1929, owning the real estate sought to be partitioned in this action.

"3. Defendants Lester Hullet, John F. Hullet, Mrs. Ethel Butts and Fred Hullet, are surviving sons and daughter of John Hullet, deceased.

"4. Plaintiff and John Hullet, deceased, were first married May 13, 1924; they were first divorced July 28, 1926.

"5. By the divorce decree of July 28, 1926, plaintiff was awarded the residence property in Protection, Kan., and certain personal property.

"6. On August 31, 1926, John Hullet, being at that time unmarried, made his last will and testament, copy of which is attached to defendant's answer; and same was duly admitted to probate in Comanche county, Kansas, on the 30th day of October, 1929. In said will John Hullet bequeathed his property to his two sons, John F. Hullet and Lester L. Hullet, and to his two daughters, Flaude E. Overstreet and Ethel P. Butts. Flaude E. Overstreet died January 31, 1929, without issue.

"7. Plaintiff elected to take under the law instead of under the will of her deceased husband, John Hullet.

"8. Plaintiff and John Hullet, deceased, were married the second time on February 3, 1927.

"9. On May 6, 1927, plaintiff and John Hullet came together to the office of attorney C. E. Baker, in the courthouse at Coldwater, Kan., and there entered into a property settlement contract, a copy of which accompanies defendants' answer. Said contract, among other things, provided that plaintiff should forever relinquish her rights of inheritance in and to the property of John Hullet.

"10. On the same day, May 6, 1927, plaintiff filed her petition asking for a divorce from the said John Hullet, and he at that time filed his entry of appearance and advanced the court costs in the case.

"11. The said property settlement contract, divorce petition and entry of appearance were all prepared at the same time by attorney C. E. Baker.

"12. Decree of divorce was entered in said case on July 21, 1927, without further appearance or contest by John Hullet, deceased; and the contract of May 6, 1927, was approved and confirmed by said decree.

"13. Plaintiff and John Hullet were married the third time February 9, 1928.

"14. After the third marriage of plaintiff and John Hullet, deceased, they lived together as husband and wife in plaintiff's residence property in Protection, Kan., except as noted in finding No. 15, until the time of John Hullet's death on May 18, 1929.

"15. Some time in December, 1928, John Hullet, deceased, rented a room at the Dale hotel, Protection, Kan., kept some of his clothes there, and lived a part of the time at said hotel until in April, 1929; during this same period he lived a part of the time at the home of his son, Fred Hullet, in Protection, Kan., and plaintiff made visits to said home during said time. John Hullet also came back to plaintiff's residence in Protection, Kan., frequently during

said time, and lived there during his last sickness from May 6, 1929, until his death on the 18th of May, 1929.

"16. Plaintiff did not return the real estate nor personal property which she received under the contract of May 6, 1927, and decree of July 21, 1927."

The contract of May 6, 1927, referred to in finding No. 9, contained the following provisions:

"All real estate now owned and held by said John Hullet is to be and remain his property, with full right to convey same as a single man, free and clear from all claims of said Minnie L. Hullet, either for property settlement, support, or alimony, right of inheritance, and any and all other rights or claims of every nature whatsoever.

"Each party to this contract hereby agrees not to claim any right, title or interest of any kind in the property of the other, real, personal, or mixed, now owned or that may hereafter be acquired; and each party hereby agrees that any will the other shall make shall be binding as though legally consented to in writing before witnesses, and hereby surrenders and gives up the right of inheritance and all rights in the property of the other under the laws of descent and distribution of Kansas or any other state, and every right as husband or wife, of the other party."

The divorce decree of July 21, 1927, referred to in finding No. 12, contained the following:

"And thereupon, the property settlement contract heretofore entered into between plaintiff and defendant upon May 6, 1927, was offered in evidence, which said contract is of record in the office of the register of deeds of Comanche county, Kansas, in miscellaneous record eight, at page 649, and which said contract the court finds makes a fair and equitable division of property as between plaintiff and defendant; and said contract is approved and confirmed, and each of the parties hereto is ordered and adjudged full ownership and title in the property as agreed in said contract."

The district court stated the following conclusions of law:

"1. John F. Hullet, Ethel P. Butts, Lester L. Hullet, are the devisees under the will of John Hullet, deceased, and acquired thereunder an undivided one-sixth interest each in the property involved in this action.

"2. The contract of May 6, 1927, was entered into in contemplation of permanent settlement and divorce, and was of no force and effect subsequent to the divorce decree of July 21, 1927.

"3. Plaintiff inherits one-half of the property of John Hullet, deceased."

Plaintiff pleaded that the contract of May 6, 1927, had been rescinded by mutual consent. The court did not so find, the findings which were made did not warrant such an inference, and the allegation of rescission was not sustained by the evidence.

The second conclusion of law was correct. The parties to the contract were husband and wife. They were unable to live together

any longer as husband and wife, and contemplated divorce as soon as a decree could be obtained. They were desirous of settling their property interests, and all that followed the words of the contract, "It is therefore agreed," related to that subject.

The parties did not rest on the contract. It was presented to the court in the divorce action, and the provisions of the contract were carried into the divorce decree. The effect of the decree is described in the opinion in *Conway v. Conway*, 130 Kan. 848, 288 Pac. 566. The effect on the subject of the contract, property interests, was that by virtue of the adjudication Hullet had full title to and ownership of his property as a single person, and Mrs. Hullet had full title to and ownership of her property as a single person. The contract was merged in the judgment, and had no further function to perform as an instrument affecting property interests.

The first and third conclusions of law were correct. When the parties married the third time their relations were precisely the same as if they married for the first time. No will of Hullet devising more than half of his property to third persons could be effective against Mrs. Hullet as to the excess without her consent. She had not consented to his will, and at his death she inherited half of the land in controversy.

Hullet could dispose of half of his property by will to third persons without his wife's consent. After the first divorce, and while he was single, he made a will, as any other single man might make a will. Mrs. Hullet did not consent to it, and was not then a person whose consent or lack of consent was of any consequence. After the second marriage her right of inheritance was the same as if no will had been made. The contract of May 6, 1927, made no reference to the will. The contract definitely referred to consent to future wills. This provision was superseded by the second divorce decree, which restored the parties to the status of single persons, and ended necessity for consent. No new will was executed. The third marriage again rendered consent necessary. No consent was given, and at the testator's death the will still in existence became effective against all heirs except the widow.

The devisees contend the waiver of inheritance contained in the contract was absolute and unconditional. As indicated, the contract was superseded by a judgment which settled property interests and barred right of inheritance. Then the two single persons married, and the same rights came into existence as if they had always pre-

viously been single. Beyond that the parties were not making an antenuptial contract. They were making an antedivorce contract, and the terms of the contract related to the subject matter of the negotiations. It is a cardinal rule of construction that the court will place itself in the situation of the parties at the time the contract was made, will consider their then status and relations, and will consider the manifest nature and purpose of the agreement. It is idle to contend the contract related to more than separation and divorce, and extended to a possible future remarriage.

The devisees contend the broad terms of the waiver of inheritance include a possible future remarriage, unless the court reads into the contract some such words as "except in case of remarriage." In order that the contract might include such a contingency it was necessary to insert some such affirmative words as "and this applies in case of future remarriage."

There are some minor assignments of error. They do not affect the essential soundness of the decision of the district court, and need not be discussed.

The judgment of the district court is affirmed.