(59 P.3d 1030)
No. 87,403

In the Matter of the Marriage of ROBERT L. ALLEN, *Appellee,* and DIANE L. ALLEN, *Appellant.*

Opinion filed December 20, 2002.

*Bradley H. Medlin,* of Olathe, for the appellant.

*Steven B. Doering,* of Law Offices of Steven B. Doering, of Garnett, for the appellee.

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

LEWIS, J.: This is a domestic action in which the appellant, Diane L. Allen, n/k/a Coates, appeals the trial court's decision holding that a separation agreement from Diane's prior divorce from her husband Robert L. Allen did not control the division of property after the couple had remarried and divorced again. She argues the court lacks subject matter jurisdiction to divide the couple's prop-

erty in any way except as set out in the prior agreement. Robert argues that the early settlement agreement does not apply and that the trial court should be affirmed.

These parties were first married in March 1993. They were then divorced in August 1998, and the decree of divorce incorporated a separation and property settlement agreement, which was approved by the court.

On March 7, 1999, the couple remarried. There was a second round in the divorce action, and a petition for divorce was filed on June 19, 1999. In the second divorce, appellant argued that the property settlement entered into in the first divorce should control the disposition of property in the second divorce. Robert argued that the prior property settlement agreement was abrogated by the remarriage and had no force and effect on the division of property in this divorce.

The court agreed with the contentions set forth by Robert and proceeded to divide the couple's property. The divorce decree in this case was filed February 2, 2001.

Essentially, the appellant contends that the trial court erred in finding a property settlement from the couple's prior divorce was not binding on the court after the couple had remarried and again were divorced.

Diane frames her issues as jurisdictional. She argues that the court lacked subject matter jurisdiction to divide the couple's property.

We disagree with appellant on her contention that the court lacked subject matter jurisdiction. "Subject matter jurisdiction is the power of the court to hear and decide a particular type of action." *Gentzel v. Williams*, 25 Kan. App. 2d 552, 559, 965 P.2d 855 (1998). K.S.A. 60-1610 and K.S.A. 23-201 vest the court with jurisdiction over the subject matter of this action, which was a divorce between two residents of Kansas and the division of property located in Kansas.

Despite the fact that this is not a subject matter jurisdiction case, the question still remains as to whether the settlement agreement is binding on the court in a subsequent divorce proceeding between the same parties after they have remarried. Our scope of

review on this issue is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The first divorce separation and property settlement agreement reads in relevant part:

"WHEREAS, it is the desire and intention of both parties by execution of this agreement, to fully and for all time settle and determine all property rights of the parties[,] all rights of wife and husband concerning maintenance, and all rights and claims arising out of the marriage relationship, including dower, curtesy, maintenance, inheritance and homestead, together with any and all other rights existing between the parties or claims one against the other, arising out of the marriage relationship or the termination of the said relationship, or otherwise, independent and regardless of the disposition, judicially or otherwise, of the marriage relationship.

. . . .

"(12) Absolute Agreement: That this agreement is absolute and irrevocable and is not conditioned upon the parties being divorced or upon approval of the Court; that this agreement shall be considered to be contractual between them and binding upon the parties, their executors, administrators, heirs, devisees, beneficiaries, assigns, or other legal representatives, where applicable for the purpose of carrying out the terms hereof; that if, at some later date, any modification hereof is agreed upon between the parties, the same shall be reduced to writing, signed and acknowledged by them before it shall become effective.

"(13) Submission to the Court: That in the event of a hearing on the Petition for Divorce as herein filed by the parties, this agreement may be submitted to any Court during the hearing for such action as the Court may determine proper, and each of the parties hereto agree that they will request the Court enter its decree in accordance with the terms and provisions herein."

The relevant statutes applying to this particular situation read as follows:

K.S.A. 2001 Supp. 23-201 reads:

"(a) The property, real and personal, which any person in this state may own at the time of the person's marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to a person by descent, devise or bequest, and the rents, issues, profits or proceeds thereof, or by gift from any person except the person's spouse, shall remain the person's sole and separate property, notwithstanding the marriage, and not be subject to the disposal of the person's spouse or liable for the spouse's debts.

"(b) *All property owned by married persons*, including the present value of any vested or unvested military retirement pay, or, for divorce or separate mainte-

nance actions commenced on or after July 1, 1998, professional goodwill to the extent that it is marketable for that particular professional, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, *shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."* (Emphasis added.)

K.S.A. 23-207 states: "Nothing in this act contained shall invalidate any marriage settlement or contract now made or to be hereafter made."

K.S.A. 2001 Supp. 60-1610(b) reads in relevant part:

"(3) *Separation agreement.* If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree. A separation agreement may include provisions relating to a parenting plan. The provisions of the agreement on all matters settled by it shall be confirmed in the decree except that any provisions relating to the legal custody, residency, visitation parenting time, support or education of the minor children shall be subject to the control of the court in accordance with all other provisions of this article. *Matters settled by an agreement incorporated in the decree*, other than matters pertaining to the legal custody, residency, visitation, parenting time, support or education of the minor children, *shall not be subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties."* (Emphasis added.)

The law of this state is clear that a property settlement, once accepted by the court and incorporated into the divorce decree, may not generally be modified by the court except as prescribed by the agreement or subsequent consent by the parties. *Miller v. Miller*, 6 Kan. App. 2d 193, 194-95, 627 P.3d 365 (1981). A property settlement in a divorce action is a kind of hybrid agreement because it has the characteristics of a judgment and it retains the contractual rights of the parties. *In re Estate of Sweeney*, 210 Kan. 216, 224, 500 P.2d 56 (1972).

In many ways, this is an issue of first impression. The parties both cite the case of *Hullet v. Hullet*, 133 Kan. 738, 3 P.2d 470 (1931). It is important to understand the result of *Hullet*. Minnie and John Hullet were first married in 1924 and first divorced in

1926. In the first divorce, Minnie was awarded the home of the parties.

John and Minnie were remarried on February 3, 1927. In May 1927, they contacted an attorney and entered into a property settlement agreement which, among other things, provided that Minnie would forever relinquish her rights of inheritance in and to John's property. Later that same day, and after the execution of the contract, Minnie filed for divorce from John. On July 1, 1927, the court, in entering the divorce decree in this second divorce, incorporated the May 1927 property settlement agreement.

John and Minnie did not give up easily. In 1928, they were married a third time. They lived together until John died in 1929.

In John's estate, Minnie elected to take her share of an undivided one/half interest in the property under the statute rather than the amounts devised and bequeathed to her under John's will. It appears that she claimed a one/half interest in certain property and that John's children were opposed. It is obvious that Minnie and John's children did not get along well. In her partition action, Minnie argued the prior settlement separation agreement was made in contemplation of a permanent settlement and divorce and was of no force and effect subsequent to the divorce decree of July 1, 1927, which awarded Minnie one/half of the property.

On appeal, John's children argued strenuously in favor of the May 1927 property agreement. Minnie argued against it. The trial court found that unless the settlement agreement contained affirmative language such as "and this applies in case of future marriage," the court would not read such intention into the contract. 133 Kan. at 742. This decision was affirmed by the Kansas Supreme Court.

In this action, there is a clause in the settlement agreement which states: "It is the desire and intention of both parties by execution of this agreement to fully and for all time settle and determine all property rights of the parties" and "arising out of the marriage relationship or the termination of the said relationship, or otherwise, independent and regardless of the disposition, judicially or otherwise, of the marriage relationship." Diane argues that

this language showed the clear intent that she and John intended the 1998 agreement to control if they remarried each other.

Diane cites *Dennis v. Perkins*, 88 Kan. 428, 129 Pac. 165 (1913). In *Dennis*, the court concluded that reconciliation and resumption of marital relations do not as a matter of law avoid a settlement agreement. Ultimately, the court sent the case back for a new trial to determine whether the parties had, by conduct or by agreement, abrogated the settlement agreement.

Unfortunately for Diane, the *Dennis* case does not apply to the facts of this matter. In *Dennis*, the parties were never divorced. In *Dennis*, they were never remarried. The only question in that case was whether the parties desired to abrogate the prior settlement agreement. There are no such facts in the instant matter.

In *Stevenson v. U.S. Nat'l Bank of Oregon*, 72 Or. App. 39, 695 P.2d 77 (1985), the Oregon Court of Appeals held that a property settlement agreement from the couple's first marriage and divorce did not control their property rights after they had remarried each other.

There are cases which have come to the opposite conclusion. In *Brinkmann v. Brinkmann*, 772 N.E.2d 441 (Ind. App. 2002), the Indiana Court of Appeals held that a property settlement agreement, incorporated as part of a divorce decree, was not automatically terminated when the parties reconciled and remarried unless the evidence showed the parties agreed or intended that the agreement was no longer valid.

As we interpret *Hullet* and other Kansas cases, we conclude that absent specific language in a property settlement agreement, which is entered into in contemplation of divorce and incorporated into the divorce decree, indicating the parties intended for the agreement to remain in effect if the parties remarry each other, the agreement will cease to be effective upon remarriage except to define what property each brings into the subsequent marriage.

Based on *Hullet*, we hold that any part of the settlement agreement which remains executory at the time of the remarriage is unenforceable. We have examined the settlement agreement in this case, and there is absolutely nothing in the agreement to in-

dicate that the couple intended for the agreement to act as a prenuptial agreement should they remarry.

Absent such language, a settlement agreement entered into in a prior divorce is abrogated by the remarriage of the parties and cannot be used to enforce the same settlement in a subsequent divorce.

Affirmed.