AGNES DEVINE

*v.*

THOMAS A. DEVINE.

[Submitted April 16th, 1918.  Determined June 5th, 1918.]

Adultery of a wife, committed after the execution of a separation agreement providing that the husband shall make regular stipulated payments to her, will defeat the recovery by her of the stipulated payments falling due after the act of adultery.

On final hearing on bill to recover balance due on an agreement of separation.

This is a suit brought by a wife against her husband to recover money claimed as due by the terms of a written agreement wherein the parties agreed to live separate and apart from each other, and the husband agreed to pay to the wife $15 per week. The following is a copy of the agreement:

"This agreement made and by and between Mr. Thomas A. Devine, Plumber, known as the party of the first part.  Mrs. Thomas A. Devine, wife, known as the party of the second part.

"It is mutually agreed that the said Thomas A. Devine, husband, party of the first part, will pay to his wife, Mrs. Thomas A. Devine, the party of the second part, the sum of $15.00, fifteen, dollars per week.

"Also the party of the first part must pay to the landlord the sum of $15.00, fifteen, dollars for the rent of house No. 20 S. Georgia Ave. due on September 10th, '15. It is also agreed that this shall be the last payment of rent by the party of the first part.

"It is also mutually agreed that the party of the first part will begin the payments of the $15.00 weekly on September 18th, '15, and the weekly payment shall continue to be paid on every Saturday following.

"It is further understood that the party of the second part shall remain away from the party of the first part place of business, also shall not by any means annoy or otherwise interfere with the party of the first part.

"If this agreement is violated by the party of the second part the weekly payments shall cease.

> "THOMAS A. DEVINE, Husband.
> "MRS. THOMAS A. DEVINE, Wife.
> "HARRY H. FREED, Witness."

At the hearing it was conclusively established by way of defence that the wife committed adultery in August, 1916. The primary inquiry herein is whether the wife's adultery was operative to defeat her recovery of the stipulated weekly payments falling due by the terms of the agreement subsequent to her adultery.

*Mr. John F. X. Ries* (by *Mr. Elwood C. Weeks*), for the complainant.

*Messrs. Bolte, Sooy & Gill* (by *Mr. H. Walter Gill*), for the defendant.

LEAMING, V. C.

It is urged in behalf of complainant that an equitable defence cannot be entertained in a suit of this nature; that the suit being solely for the recovery of money due under a contract and being brought in this court because the law courts cannot entertain an action by a wife against her husband, this court is restricted to the same defences that a law court could entertain had there been a trustee to prosecute the action in a court of law in behalf of the wife. This view is suggested in *Buttlar* v. *Buttlar, 57 N. J. Eq. 645* (at *p. 654*), but is not made the basis

of decision in that case. In a subsequent suit between the same parties (*Buttlar* v. *Buttlar, 71 N. J. Eq. 671*), the same question arose and was necessary to the decision of the case. It was there pointed out that it is not the incapacity of one spouse to sue the other at law which denies jurisdiction to a law court, but their incapacity at law to make a contract; that at law agreements between husband and wife are void, but in equity they will be recognized and enforced if fair and fairly obtained. Accordingly, it was there held that equitable defences must be entertained in this court in suits of this nature. The same view was adopted in *Halstead* v. *Halstead, 74 N. J. Eq. 596, 598*. It seems impossible to doubt the soundness of the view that where a spouse comes into a court of equity to invoke its established equitable powers to give recognition to a contract which is classed as void at law, such appeal for equitable relief necessarily calls into activity every recognized equitable consideration entering into the controversy that may aid a just determination of the rights of the parties. It is this enforcement of the rights of the parties in accordance with the inherent justice of the case which courts of equity are constantly striving to attain through the enforcement of the established rules of equity jurisprudence. But I think a solution of the present controversy may be reached without the aid of any rules which are classed as obtaining in courts of equity exclusively.

What effect upon the legal rights of complainant arising from this agreement is to be given to her adultery committed after the execution of the agreement?

In England the adjudications from an early date have been to the effect that the adultery of the wife committed after the execution of a separation agreement will not deny to her the right of recovery of the stipulated periodical payments for her support falling due after her adultery, unless the agreement expressly provides that the payments shall continue to be made only so long as she remains chaste; that in the absence of such *dum casta* clause in the agreement no such clause will be implied.

Those adjudications cannot be appropriately disregarded unless conditions are found to exist in this jurisdiction which deny

to them the force they would otherwise possess. In that view a consideration of the English cases seems necessary.

The English authorities touching the question here propounded are the following: *Sidney* v. *Sidney, 3 P. W. 269; Winter* v. *Blount, note to 3 P. W. 277; Field* v. *Serres, 4 B. & P. (1 B. & P., N. R.) 121; Seagrave* v. *Seagrave, 13 Ves. Jr. 439; Scholey* v. *Goodman, 1 Bing. 349; Jee* v. *Thurlow, 2 B. & C. 547; Baynon* v. *Batley, 8 Bing. 256; Evans* v. *Carrington, 2 De G. F. & J. 481; Gandy* v. *Gandy, L. R., 7 Pro. Div. 168; Bradley* v. *Bradley, 7 Pro. Div. 237; Fearon* v. *The Earle of Aylesford, L. R., 14 Q. B. Div. 792; Sweet* v. *Sweet (1895), L. R., 1 Q. B. 12.*

*21 Cyc. 1597; 9 Rul. Cas. L. 532,* and *12 Eng. Rul. Cas. 814, note,* are to the same effect, but are wholly based upon some of the cases above cited.

An examination of these cases will disclose that one of the controlling circumstances on which the learned judges have based their conclusions is the fact, repeatedly stated, that in England the preparation of separation agreements has long been in the hands of skilled solicitors who have thought it expedient to embody *dum casta* clauses in such agreements; from that circumstance the inference is drawn that in the absence of that clause in a separation agreement, so prepared, an implied condition that the wife shall remain chaste will not be inferred. The inference is not drawn that the parties intended that the wife should be privileged to commit adultery, for a provision in the agreement to that effect, or even an ascertained purpose of the parties to that effect, was held to render the whole agreement void (*Evans* v. *Carrington, 2 De G. F. & J. 481, 492*), but by reason of the customary use of the *dum casta* clause by skilled draftsmen, its absence was deemed measurably operative to repel an implied condition which might otherwise have been thought necessarily present in agreements of that nature. The agreement here under consideration clearly dispels all force that has been given to considerations of the nature stated, for this agreement obviously has been drawn by the parties or by some person wholly unskilled in drafting agreements of any kind. So far as the English cases can be said to rest upon the inferences to be drawn

from the custom of skilled draftsmen of separation agreements, it seems clear that their force is lost in the present controversy.

But an important radical difference is to be found between the English law and that of this jurisdiction which appears to invade the very foundation of the decisions above cited and further renders them inapplicable to our conditions. In England the contract of a husband and wife to live apart is not restricted by law to the period of their mutual assent, and the contract can be specifically enforced; either spouse, if without wrong, may, by force of the contract, maintain a bill to restrain the other from an action for the restitution of conjugal rights. See *Besant* v. *Wood, L. R., 12 Ch. Div. 605,* and cases there cited. In New Jersey separation agreements have no such force. Here married persons may agree to live separate and apart from each other because it is their privilege to live in that manner so long as they mutually desire to do so, and the husband's agreement to support his wife during that period of time is in harmony with his lawful duty; but an agreement of separation cannot confer on either party the right to live away from the other against the will of the other. *Aspinwall* v. *Aspinwall, 49 N. J. Eq. 302; Mockridge* v. *Mockridge, 62 N. J. Eq. 570.* By policy of the law the period for which they thus contract touching their separation is limited to the period of their future mutual assent to live apart. Accordingly, in the absence of wrong-doing on the husband's part, he may require his wife's return to his bed and board, and her refusal will not only constitute her an obstinate deserter, but will deny to her any right to support from him, notwithstanding the existence of an agreement wherein they have mutually stipulated to live apart. *Moores* v. *Moores, 16 N. J. Eq. 275; Power* v. *Power, 65 N. J. Eq. 93; S. C., 66 N. J. Eq. 320.* The wife's act of adultery while living separate from her husband, pursuant to the terms of a separation agreement, is thus operative to deny to her husband the right to require her return to him—a right preserved to him by our law—unless he condones an act which he is under no legal or moral obligation to condone. And the legal obligation of a husband to support his wife exists only so long as she shall remain chaste (*Bradbury* v. *Bradbury (Court of Chancery), 74 Atl. Rep. 150*), unless it

shall be held that the burden of the agreement for support contained in a separation agreement survives that period.

It thus appears that in this jurisdiction, unlike England, the period of operation of the stipulation to live apart, however broadly expressed, cannot lawfully be extended, or contemplated as intended, to extend beyond the time when either party shall withdraw assent; that the husband's withdrawal of assent to the separation brings into existence the duty of the wife's return; that her failure to return denies to her the right to further support, so far as the stipulations of the agreement touching her right to live away from her husband are concerned; that her adultery in like manner denies to her the right to further support, so far as the stipulations of the agreement touching right to live apart from her husband are concerned. Accordingly, the absence of a limitation as to time or event in the provisions of the agreement touching support, if held to entitle the wife to support, notwithstanding her unlawful refusal to return or notwithstanding her adultery which denies to her the right to return, must be deemed to relate to and include circumstances and conditions which the law does not permit the parties to contemplate in their stipulations touching their right to live apart. As the agreement to live apart necessarily reserved to both parties the right to withdraw from that engagement at any time, without such right being expressed in the agreement, it would seem that the stipulation touching support, contained in the same agreement (which stipulation in such circumstances clearly contemplates separate domiciles which render the stipulated periodical payments for support necessary), must be understood as operative only within the legitimate field of operation of the primary stipulations of the agreement touching separation. So closely related are the engagements for living apart and for support that any appropriate recognition of established rules of construction appears to require that in a single instrument they should be read together and understood as dependent and co-extensive in their operation and force; the termination of the contractual force of the engagement for separate domiciles should thus terminate the obligation contemplating and based upon the existence of that condition. The absence in the English law

of this limitation upon the rights of the spouses to contract, touching the period of their separation, appears to impel the conclusion that the decisions of that jurisdiction are inapplicable to conditions here present. Moreover, any assumed contemplation of the parties that a virtuous wife may fall from virtue attributes to a virtuous woman an almost impossible and wholly unreasonable conception, and attributes to the husband a contemplation so unnatural and so at variance with the field of privilege which the law extends that the implied condition of chastity seems necessarily present in such agreements.

In this country, *Babcock* v. *Smith, 22 Pick. 61,* and *Galusha* v. *Galusha, 116 N. Y. 635,* may be cited as indirectly bearing upon the question here involved. The former was a bill in equity for relief against the provisions of a marriage settlement because of the adultery of the husband. The view is there adopted that the conventional disposition of property in a deed of marriage settlement will not be disturbed. In the latter case it was held that the annual allowance for the wife's support as fixed in a separation agreement would limit and control the amount of alimony which the court could award the wife in her divorce decree against her husband. See dissenting opinion of the chief-justice in this case, reported at end of *Clark* v. *Fosdick, 118 N. Y. 18.*

In this state, in *Dixon* v. *Dixon, 23 N. J. Eq. 316,* a bill was filed by the husband to set aside a conveyance which had been made by the husband to his wife's trustee in settlement of her suit for maintenance. The ground for relief was the wife's adultery. On the motion for a preliminary injunction the wife's adultery subsequent to the conveyance was treated as admitted. It was there held by Chancellor Zabriskie that a deed of settlement of that kind, if good at its execution and delivery, would not be set aside for adultery or any misconduct of the wife afterwards. Some of the English cases above cited are there referred to in support of that view. The same view was adopted by Vice-Chancellor Dodd, to whom the case was referred for final hearing. *Dixon* v. *Dixon, 24 N. J. Eq. 133.* In *Lister* v. *Lister, 35 N. J. Eq. 49,* the bill, filed by a husband, sought to set aside conveyances which he had made, or caused to be made, to his wife,

the ground of relief in part being the wife's subsequent adultery. No separation agreement was there involved. The court found the conveyances to have been gifts to the wife and held that her subsequent adultery afforded no ground for setting aside the conveyances. The same authorities cited in *Dixon* v. *Dixon, supra,* are there partially reviewed. In these New Jersey cases the effect of the subsequent adultery of the wife on executory stipulations for the wife's support contained in a separation agreement was in no way involved or considered. The conveyance which was sought to be set aside in *Dixon* v. *Dixon* was made long before the adultery was committed; there was clearly no total failure of consideration and no basis for relief against the deed *pro tanto.*

I am convinced that the engagements of defendant for weekly payments to his wife for her support can only be understood in this jurisdiction as relating to such period of time as the parties should reside separate and apart from each other pursuant to and by reason of their mutual agreement for that purpose; that the engagements of defendant for weekly payments for his wife's support while so living apart from him must also be understood as accompanied by an implied condition that she remain chaste during that period of time.