# WILLIAM H. VANDERBURGH v. EVELYN VANDERBURGH.[1]

May 19, 1922.

No. 22,725.

**Husband's contract for separate maintenance of wife — consideration.**

1. A contract by a husband for the separate maintenance of his wife, executed when they were living apart by mutual consent, is not contrary to public policy. The release of the husband from all other claims for the wife's support was a sufficient consideration for the contract.

**Not abrogated by requesting wife to return.**

2. By the terms of such a contract the husband's obligation to make stipulated payments for his wife's support was to continue until the parties mutually agreed to live together again. The husband requested the wife to return, but she paid no attention to the request. The court found that it did not clearly appear that the request was made in good faith. *Held* that the contract was not abrogated by such request.

**Attempt at reconciliation necessary before either spouse can charge desertion.**

3. After husband and wife have separated by mutual consent, neither can be charged with desertion until the spouse making the charge has attempted in good faith, but without success, to bring about a reconciliation.

**No fraud or duress in obtaining contract.**

4. The husband's execution of the contract here involved was not obtained by fraud or duress and was not improvident or unreasonable.

**No avoidance of contract because relating to real estate.**

5. The contract could not be avoided by virtue of section 7147, G. S.

[1]Reported in 188 N. W. 276.

1913, as one relating to the husband's real estate, although it referred to and made net rentals received from such real estate the basis for determining his income and provided that one-half of his net annual income should be paid to the wife for her support.

**Fee of wife's attorney could be fixed by trial court.**

6. The value of professional services rendered by the wife's attorneys in connection with the contract and the litigation over it might be determined by the trial court from its own experience and the circumstances disclosed by the record.

Action in the district court for Hennepin county to cancel a contract and to enjoin defendant from prosecuting actions to recover instalments due under its terms. Defendant prayed that the contract be held enforceable and that the court determine the amount due defendant for the year next following July 1, 1919. The case was tried before Nye, J., who made findings holding the contract valid, and ordered judgment in favor of defendant, with $200 attorney's fees. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Jay W. Crane,* for appellant.

*Sanborn, Graves & Ordway,* for respondent.

LEES, C.

Plaintiff and defendant were married February 22, 1913, at London, England. Thereafter and until October 7, 1914, they lived abroad except for a few months when they were in Minneapolis. Defendant was born and had always lived in England. Plaintiff was born and lived in Minneapolis. He is 60 years old. Defendant is 20 years younger. In October, 1914, they were staying in London. On October 7 plaintiff left to return to the United States. He has lived in Minneapolis ever since, while defendant has continued to live in London. Before leaving England, plaintiff wrote a note to defendant's solicitor, stating that he had instructed his agent at Minneapolis to place certain sums of money monthly to defendant's credit in a Minneapolis bank and that such sums represented one-half of his net income. In September, 1915, he gave her an

agreement in writing for the payment of a stated monthly allowance so long as they were not living together. In August, 1916, there was another agreement for defendant's support. On April 16, 1919, it became necessary for plaintiff to execute a mortgage on real estate he owned in Minneapolis. He was in arrears in the payments he had agreed to make for defendant's support. She refused to join in the execution of the mortgage, unless plaintiff paid up the arrearages and entered into a new contract with her, prepared by her attorney. Such a contract was executed. The material portions thereof were as follows:

After July 1, 1918, plaintiff was bound to pay defendant for her support a sum equal to one-half of his net annual income, to be determined by deducting taxes, interest on mortgages, fire insurance premiums, disbursements for repairs and commissions for the renewal of mortgages upon his real estate, from the gross rentals, gains and profits of all the real estate he then owned or thereafter acquired. Payments were to be made in equal monthly instalments at the office of her attorney. At least 60 days prior to the first day of July in each year, plaintiff was to furnish a statement showing the receipts and disbursements above mentioned. He was to pay defendant's attorney's fees and expenses incurred by reason of his failure to make agreed payments and also attorney's fees in connection with the making of the contract. In the event of a sale of any or all of his real estate, one-half of the net proceeds were to be placed in the hands of a trustee and the net income thereof paid to defendant during the term of her life. If she outlived the plaintiff, the trust was to terminate at his death and she was to receive the whole of the trust fund. In consideration of these undertakings, defendant released plaintiff from all other claims for support she might have upon him. It was stipulated that none of the provisions of the contract should affect the rights of the parties in plaintiff's real estate. An important clause in the contract read thus:

"The terms of this agreement shall be for such period of years as the parties may live separate and apart and until by mutual consent this agreement shall terminate and until they mutually agree to live together again."

On June 10, 1919, plaintiff, by letter, requested defendant to come to Minneapolis and live with him. She did not come and never made any reply to the letter. In December, 1919, he brought this action to cancel the contract and to enjoin defendant and her attorneys from prosecuting certain actions brought upon it to recover two of the instalments due according to its terms. See Vanderburgh v. Vanderburgh, 148 Minn. 120, 180 N. W. 999. In her answer to the complaint, defendant pleaded as a counterclaim the amount of certain past due instalments. The findings were in the defendant's favor, cancelation of the contract being denied and judgment being ordered for the amount of defendant's counterclaim and $200 attorney's fees. Plaintiff moved for a new trial and has appealed from an order denying the motion.

1. In our opinion this appeal is virtually determined by the answer to the following question: What was the effect on the contract of plaintiff's request that defendant come to Minneapolis to live with him as his wife? If this were an ordinary commercial contract, plaintiff's obligation would continue until defendant released him therefrom. Should a different rule be applied to a contract between husband and wife for the separate maintenance of the wife?

There can be no doubt that such contracts, at least when entered into after a separation has taken place, are perfectly valid. This is so well settled that citation of authority is needless. The cases are collated in Tiffany, Dom. Rel. p. 238; Schouler, Dom. Rel. p. 1554; Williston, Contracts p. 3042; 9 R. C. L. p. 524. We have then a valid contract into which it is proposed to read a condition not expressed in the language of the instrument. This condition, it is said, is one which the law attaches because of the interest of society in the faithful observance of the obligations of the marriage contract by the parties thereto. But the law is powerless to compel husband and wife to live together when they have determined to live apart. All that the courts can do is to refrain from encouraging separations by frowning on every arrangement designed to facilitate divorce. The policy of this court has been repeatedly stated. Adams v. Adams, 25 Minn. 72; Roll v. Roll, 51 Minn. 353, 53 N. W. 716;

McAllen v. Hodge, 94 Minn. 237, 102 N. W. 707; State v. Yoder, 113 Minn. 503, 130 N. W. 10, L. R. A. 1916C, 686; Klampe v. Klampe, 137 Minn. 227, 163 N. W. 295. Manifestly the contract before us was not made to facilitate divorce, nor was it in aid of a separation, for that was an accomplished fact when it was executed. It is within the power of the parties to do away with the contract at will, hence it presents no obstacle to the resumption of marital relations. But, just as their mutual assent was essential to the making of the contract, so is it essential to its annulment, unless it be the law that the husband alone may bring about a rescission by requesting the wife to return to him. There are many cases holding that, if she does return, the contract is avoided. They are collected in a note to Dennis v. Perkins, 88 Kan. 428, 129 Pac. 165, 43 L. R. A. (N. S.) 1219, in 9 R. C. L. 534; and in Schouler, Dom. Rel. p. 1560. There are but few cases discussing the effect upon the contract of the husband's request that his wife return.

Devine v. Devine, 89 N. J. Eq. 51, 104 Atl. 370, lends some support to plaintiff's contention that such a request relieves the husband from his obligation. In that case, it was said [at page 55]:

"By policy of the law the period for which they thus contract touching their separation is limited to the period of their future mutual assent to live apart. Accordingly, in the absence of wrong-doing on the husband's part, he may require his wife's return to his bed and board, and her refusal will not only constitute her an obstinate deserter, but will deny to her any right to support from him, notwithstanding the existence of an agreement wherein they have mutually stipulated to live apart."

The contention is also supported to some extent by Carl v. Carl, 166 N. Y. Supp. 961.

Daniels v. Benedict, 97 Fed. 367, 38 C. C. A. 592; Dennis v. Perkins, 88 Kan. 428, 129 Pac. 165, 43 L. R. A. (N. S.) 1219; Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. 458, and Sargent v. Sargent, 106 Cal. 541, 39 Pac. 931, point to a different conclusion, and Calkins v. Long, (N. Y.) 22 Barb. 97, cited in Carl v. Carl, supra, and in Roll v. Roll, supra, suggests a dis-

tinction between contracts where only a temporary separation was contemplated and those indicating that the separation was to continue indefinitely. The contract considered in Devine v. Devine, unlike the contract in the case at bar, was silent with respect to its duration. In Galusha v. Galusha, supra, the contract provided for the wife's support during her lifetime, and the court said: "After its making it was not in the power of either party, acting alone and against the will of the other, to do an act which would destroy or affect that contract."

Hertz v. Hertz, 136 Minn. 188, 161 N. W. 402, applies this doctrine to a similar contract in considering the effect of a decree of divorce obtained by the husband.

In our examination of the authorities, we have found no suggestion that a contract containing a clause substantially like that quoted in the statement of facts should continue in effect only so long as the husband does not require the wife to return to him. In this connection, it should be observed that all the authorities, in discussing the question, assume that the husband's request was made in good faith and was the expression of a sincere desire for a reconciliation. In the present case, the findings are that it does not clearly appear that the request was made in good faith; that it was open to the suspicion of being selfserving and intended to terminate the contract. It was also found that the evidence as a whole failed to show that during the years of their separation the plaintiff really desired his wife to live with him. In view of these findings, plaintiff is hardly in a position to assert that defendant is an obstinate deserter and to invoke the rule he asks us to apply on the authority of Devine v. Devine. It is a firmly established principle of the law of divorce that separation by mutual consent does not constitute desertion. After such a separation has occurred, the husband must attempt in good faith to effect a reconciliation before he may charge the wife with desertion. 19 C. J. 64, 65; 9 R. C. L. 358, 373. If plaintiff makes a reasonable and honest effort to induce defendant to return to him and she refuses, she may be charged with desertion and he may be in a position to maintain an action for divorce on that ground. It is probable that in such an action he

would be entitled to have the contract set aside on condition that suitable provision for his wife's support is made in the decree of divorce. In the absence of such a provision, defendant's right to enforce the contract will even survive a decree of judicial separation. Hertz v. Hertz, supra. For the reasons above set forth, we conclude that the contract was not abrogated by the request for defendant's return.

The remaining questions do not require extended discussion.

2. We are not concerned with the causes which led to the separation of these parties. When the contract was executed and for several years theretofore they lived separate and apart by mutual consent. Their separation is recited in the contract and their consent is found as a fact by the trial court.

The contract was not contrary to public policy and the release of plaintiff from all other claims for support was a sufficient consideration. Roll v. Roll, supra; Vanderburgh v. Vanderburgh, supra.

3. We do not sustain the contention that the contract should be canceled or defendant enjoined from enforcing it because its provisions are unreasonable or because plaintiff was improvident in entering into it. No fraud was practiced upon him and he was under no duress. True, defendant exacted his signature to the contract in exchange for her signature to the mortgage he was obliged to give, but they dealt at arm's-length. He was a man of ripe experience, a lawyer by profession, and presumably capable of protecting his own interests. The provision for defendant's support was generous, but not more so than that he voluntarily agreed to make when he left her in England in 1914. In all his subsequent dealings with her, he apparently adhered to his original purpose of sharing his net income with her equally.

4. Section 7147, G. S. 1913, declares that no contract between husband and wife relative to the real estate of either, or any interest therein, shall be valid, but in relation to all other subjects either may contract with the other. The statute is applicable to a husband and wife who are living apart. Phillips v. Blaker, 68 Minn. 152, 70 N. W. 1082. The court found that when the contract was made plaintiff was the owner of certain real property in the city of

Minneapolis, which he had leased and from which he derived annual rentals amounting to $9,500. Apparently he had no other source of income. Quoting from State v. Royal Mineral Assn. 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, 145, plaintiff contends that the subject matter of the contract is unaccrued rents from real estate, which, though separable from the land, are part of it until separated. He also contends that the clause creating a trust for defendant's benefit invalidates the contract. Conceding, for the purpose of argument, that a contract by a husband to turn over to his wife rents received from his real estate is within the purview of the statute, this is not such a contract. It merely obligates plaintiff to pay defendant one-half of his net annual income. Unaccrued rents are not the subject matter of the contract. They were the source of plaintiff's income. Save for the purpose of specifying how his net income was to be ascertained, no purpose was served by the reference to the rentals.

Whether the trust clause is valid or not need not be determined. The question will not arise, unless the property is sold in defendant's lifetime. Even though this provision be invalid, it does not affect the validity of other portions of the contract. They are not so interwoven that if one is invalid the entire contract becomes a nullity. Hamilton v. Hector, L. R. 13 Eq. 511.

5. It was proper to allow attorneys' fees to defendant without proof of the value of her attorneys' service. The court might determine the value from its own experience and the circumstances of the case as disclosed by the record. Kingsley v. Anderson, 103 Minn. 510, 115 N. W. 642, 116 N. W. 112.

Order affirmed.

QUINN, J. (dissenting.)
I dissent from the conclusion reached.