A wife sues her husband on a separation agreement. The contract recites that "the parties hereto find it impossible to live together in peace and harmony and have decided to separate and to live separate and apart." The husband agrees to pay the wife $8 a week and she agrees not to interfere with his affairs or to pledge his credit.
A contract between husband and wife, while void at law, is good in equity if fair and fairly obtained. Wood v. Chetwood,44 N.J. Eq. 64. The first defense is that the contract was not fairly obtained. Sometime before the parties separated, a man named Bellina had been a roomer in the Aiosa home; Aiosa became jealous, deeming that his wife and Bellina were too friendly. Just before the separation agreement was executed, Aiosa asked, "what of Bellina?" and was answered by his wife's lawyer, "it is understood, of course, that he will keep away." With this assurance, Aiosa signed the agreement. He charges that Mrs. Aiosa was guilty of bad faith, in that she intended to resume her friendship with *Page 170 
Bellina and that the day after her husband left, Bellina began to take his meals at her house. This, Mrs. Aiosa denies and says that Bellina never even called until after her husband stopped making the stipulated payments; that then, since she needed money, she arranged that Bellina should board with her, but that he never was alone with her. On this issue, the proofs support Mrs. Aiosa.
The next defense is that about a month after the separation, Aiosa in good faith offered to return to his wife and to resume marital relations with her, and that she refused. Did such an offer on his part and his wife's rejection thereof, terminate her right to weekly payments pursuant to the agreement? Defendant relies upon Devine v. Devine, 89 N.J. Eq. 51, in which Vice-Chancellor Leaming held that the wife's adultery terminated her right to support under a similar agreement and in the course of his opinion said that the agreement is binding only so long as both acquiesce in living apart. But this case was criticised by the court of errors and appeals in Whittle v. Schlemm,94 N.J. Law 112.
Chancellor Walker, writing the opinion, said that Vice-Chancellor Leaming deduced "that it is the policy of the law that the period for which persons in this jurisdiction may contract touching their separation is limited to the period of their future mutual assent, and that, accordingly, in the absence of wrongdoing on the husband's part, he may require his wife's return to his bed and board, and her refusal will not only constitute her an obstinate deserter but will operate to deny her any rights to support from him, notwithstanding the existence of an agreement; and that the wife's act of adultery while thus living separate from her husband, pursuant to the terms of a separation agreement, operates to deny to her husband the right to require her return to him unless he condones the act; and that therefore the legal obligation of the husband to support his wife exists only so long as she shall remain chaste.
"We are unable to concur in the reasoning of the learned vice-chancellor or to agree that there is any different rule in New Jersey from that which obtains in England with reference to the right of the wife, while living separate and apart from her husband, to secure the funds provided for her support *Page 171 
in a separation agreement even after the commission of an act of adultery by her, because, in our opinion, the husband's liability persists, unless there is an express stipulation and limitation in the separation agreement that payment shall cease in the event of her becoming unchaste."
Now it will be observed that in neither of these cases was the question presented whether the refusal of the wife to return to her husband operated to terminate his agreement to support her and it is not entirely clear from Chancellor Walker's opinion whether the appellate court disapproved of Vice-Chancellor Leaming's dictum on the subject.
It seems to me, however, granted that a wife's adultery is not a defense to her action on the contract, then her desertion begun by her refusal to return to him is likewise not a defense. As Vice-Chancellor Leaming pointed out, her adultery operates to deny to her husband his right to live with her unless he is willing to condone her offense. If such a violation of his right does not terminate his agreement, neither should her flat refusal to live with him have that effect.
In England and in the few American states where the matter has been considered, an agreement by a husband to make periodic payments for the support of his wife until they shall mutually agree to live together again, is not contrary to public policy and is not terminated by the husband's offer to renew cohabitation. Guth v. Guth, 3 Bro. C.C. 614; 29 Eng. Rep. 729;Vanderburgh v. Vanderburgh, 152 Minn. 189; 188 N.W. Rep. 276;Calkins v. Long (N.Y.), 22 Barb. 97; Mann v. Hulbert
(N.Y.), 38 Hun. 27; see, also, 30 C.J. 1066. On the other hand, in Carl v. Carl, 166 N.Y. Supp. 961, it was held that a separation agreement should be construed, if possible, to obligate the husband to support his wife only until he should offer to return to her.
If the case before me depends upon the construction of the contract, it seems to me clear that the parties, having mutually decided that it was impossible for them to live together in peace and harmony, did not intend that the agreement should be terminated by the change of mind of one of the parties alone. It becomes unnecessary for me to weigh the evidence relative to this defense. I will advise a decree for complainant. *Page 172