No. 29,142.

CHARLES A. BOND et al., *Appellees*, v. PETER MIKEL, and BEN KUIKEN, as Administrator of Albert Appleton, Deceased, *Appellees;* SOPHIA R. APPLETON, *Appellant.*

(284 Pac. 379.)

Opinion filed February 8, 1930.

C. L. *Kagey*, L. M. *Kagey*, both of Beloit, and C. M. *Higley*, of Cawker City, for the appellant.

R. W. *Turner* and D. F. *Stanley*, both of Mankato, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:    This was an action to quiet the title to an eighty-acre tract of land in Jewell county.  Albert Appleton and Sophia Appleton lived together as man and wife, and occupied the land in question with an adjoining eighty-acre tract, and separated about two weeks before the making of a postnuptial contract, since which time they have not lived together and were never divorced. He died in the month of February, 1929, and the plaintiffs, Charles A. Bond and Peter Mikel, were the children of his deceased sister and his only heirs, unless his wife, who had entered into the postnuptial contract, is entitled to the real estate left by him.  The postnuptial contract made a division of the property, by which it was provided that all right, title, or claim of interest in and to the share of property assigned to his wife was surrendered and released to her which he might have by inheritance or otherwise, and she

on her part agreed to release and relinquish to her husband any claim for future maintenance, and released all right, title, claim or interest to the other eighty, and to all personal property now owned by her husband, real and personal, which he may hereafter acquire, and released to him, his heirs and assigns, all claim, interest in and to said property, which she may have by inheritance or otherwise; and the parties agreed each with the other not to interfere with the other in any way or make any claims on each other, reserving, however, the right to sue for divorce. It is admitted that Albert Appleton continued to occupy the premises in question as his homestead from the time of the execution of the agreement until his death in 1929, and that he was the owner and holder of the land at the time of his death, and that he died without issue. The only question submitted to the court was whether or not Sophia R. Appleton was barred from her right of inheritance in the land under the post-nuptial contract, and the court found that she had no right, title or interest in and to the estate of Albert Appleton, and adjudged that the plaintiffs and other defendants were the owners in fee simple of the land, and that Sophia Appleton and all persons claiming under her are enjoined from setting up any right, title or interest in and to the real estate or any part thereof.

It is contended on the part of Sophia Appleton that the making of the postnuptial contract did not deprive her of her rights to inherit from the defendant, and that but for that contract she would be entitled to the land in controversy. It is urged that the contract was no more than would have been if she had made a deed to the land. Such a deed would not deprive her of her inheritance to the property, if it was undisposed of at the time of his death.

It is well settled that a husband and wife who have separated, or contemplate a separation, may make a valid agreement settling their property rights and providing for the surrender of the rights of inheritance that either may hold. In *King v. Mollohan*, 61 Kan. 683, 60 Pac. 731, 198 Pac. 969, it was said:

"Marriage settlements controlling the division and affecting the descent of property, freely and intelligently made, and which are just and equitable in their provisions, are not invalid." (Syl. ¶ 1.)

See, also, *Blair v. Blair*, 106 Kan. 151, 186 Pac. 746; *Allen v. Allen*, 108 Kan. 765, 196 Pac. 1075; *Hoard v. Jones*, 119 Kan. 138, 237 Pac. 888; *Keller v. Keller*, 121 Kan. 520, 247 Pac. 433.

It is essential that contracts of this character be freely made and

that they be just and equitable in their provisions. There is no claim that the contract in question was not fairly and understandingly made, nor that its provisions are unreasonable or inequitable. It is argued that the contract does not in effect dispose of the right of inheritance, which right it is insisted cannot be taken away by a doubtful interpretation of its language. It can hardly be said that the language of the contract is open to question or to doubt as to that right. By its provisions the husband transferred to the wife one-half of the quarter section and did forever surrender and release to her any interest he might have by inheritance or otherwise. The same transfer was made by the wife to her husband of the other eighty-acre tract. In language of the same purport, she did—

"Covenant and agree with said first party (the husband) to release and relinquish said first party from any claim for future maintenance or support and does hereby relinquish and release all right, title, claim or interest in and to (certain lands described, being that involved here) and all personal property now owned by said first party, and to any and all property, both real and personal, which he may hereafter acquire and own, and does hereby forever surrender and release to said first party, his heirs and assigns, all claim, and interest in and to said property which she may have by inheritance or otherwise," etc.

When she surrendered and released all claim or interest in the property she might have by *inheritance or otherwise,* she effectually barred herself from claiming any of the property by descent or inheritance. It was an express waiver of the right she is now claiming and it would be difficult to use language that would express that intention more clearly or conclusively.

Some mention is made of the fact that both tracts together had been used as the homestead of the parties, but their joint contract covers a homestead as fully and effectually as it would any other land.

The judgment is affirmed.